Barrett, J.
—It is perfectly well settled that the courts of this State have no jurisdiction in actions against the consuls of foreign governments (Davis v. Packard, 7 Pet., 276 ; Valarino v. Thompson, 7 N. Y. [3 Seld.], 576.) It is equally well settled that the courts of the United States have not jurisdiction to enjoin the proceedings of a State court (Diggs v. Wolcott, 4 Cranch, 179).
Can it be possible, then, that, owing to the want of jurisdiction on our part over the person, and on the part of the United States courts over the subject-matter, the plaintiff is remediless ?
It is clear that even the supreme necessity of the case cannot confer jurisdiction upon the State courts, in the face of the express prohibition contained in the judiciary act of 1789. The suggestion was made in Yalarino v. Thompson, above cited, that where another person was liable jointly with a consul, the former, although not ordinarily subject to the jurisdiction of the United States courts, was thereby drawn into it necessarily and by unavoidable implication. Perhaps their jurisdiction may, by a like implication, and to prevent a denial of justice, be extended to a subject-matter over which the general rule is opposed to the exercise of their authority. Without speculating upon the possible action of a United States court, in such a contingency, it is apparent that this court cannot retain the injunction as against Manara.
With respect to the remaining defendants, the injunction should be continued until the hearing. There is certainly doubt as to the bona Jides of the judgment. Manara says that his firm loaned $15,000 to Albites <& Steffanone “ on and before” the 16th day of May, 1867, taking *78 therefor three notes—one for $4,000, payable August 1st, 1867; one for $6,000,.payable November 1st, 1867 ; and one for $5,000, payable May 16th, 1870. Each of these notes carries interest from its date, and recites that value had been received “in money”—a peculiar and unusual expression to appear in such paper. Manara does not give the dates or amounts of these respective advances, nor does he tell us how much was loaned on the 16th day of May, and how much before. It is singular that the chattel mortgage, given to secure these alleged advances, should have been made to Manara personally, and not to his firm, and that the three notes should not have been specified in the condition, but that “the just and full sum of $15,000” should be thereby made payable on the 1st day of May, 1870. This latter date seems to have no connection with any of the notes, for even the third is payable on the 16th of May, 1870. There is a suspicious silence, too, in respect to the averment of Manara & Co.’s limited means, and the consequent improbability of their being able to.advance large sums; also, as to the fact that the advances are not entered in Albites & Co.’s books, and the complete poverty of that firm, notwithstanding such large advances.
It is not my intention to pass on the facts further than to show the existence of a reasonable suspicion, respecting the good faith of the judgment. ' That being found, there is no difficulty in ujcholding the injunction notwithstanding the dismissal of Manara from the suit. It is a familiar ' rule of equity that where a person who ought to be a party is out of the jurisdiction, and the fact is admitted or proved, that of itself constitutes "a sufficient ground for dispensing with his being made a party, and the court will proceed to a decree without him (Story Eq. Pl., § 78; Cockburn v. Thompson, 16 Ves., 336). This rule is not i confined to mere nominal parties; and it is well settled that even in the case of one partner residing in a foreign - country, the court will proceed to make a decree against "the partners within the jurisdiction, provided it caii be ¡ done without manifest injustice to the absent partner *79 (Coop. Eq. Pl., 33 ; Mitf. Eq. Pl., by Jeremy, 31, 164 ; Couslad v. Cily, Prec. Ch., 83 ; Darwent v. Walton, 2 Atk., 570 ; Walley v. Whalley, 1 Vern., 487 ; Milligan v. Milledge, 3 Cranch, 220). Judge Story says (Eq. Pl., § 79), that these rules were peculiarly necessary in the courts of the United States, where suits can in general be maintained only by and against citizens of different States ; and in Simms v. Guthrie (9 Cranch, 19), the supreme court of the United States held that on a bill filed in the circuit court to enjoin a judgment at law, it was not necessary to make other parties, if the introduction of those parties should create a a doubt as to the of the court.
There is no distinction in principle between the case of a party absent from the jurisdiction and one not subject to it. Equity in either case will grant relief as against those within and subject to its jurisdiction.
The doctrine contended for by the defendant would deprive the State courts of jurisdiction in every one of that immense class of cases which are the subject of equitable cognizance, where a single defendant happened to belong to this body of now exceedingly numerous public agents. Fortunately for the due administrati on of j ustice, equitable relief can in many instances be afforded without the presence of such parties ; and in the present case, the complaint can be amended by striking Manara out as a party defendant, and inserting the proper averments to account for his absence. The suit can then proceed against the remaining defendants, Manara being amply protected by his partner, the defendant De Negre.
It was also suggested that Manara, upon the dissolution of the injunction as against him, might render the order futile by personally directing the sheriff to execute the enjoined process. The effect of the order is not the present question, and the subject need not be pursued further than to suggest that should the occasion demand, there can be no objection to making the sheriff a party defendant and enjoining him specifically.
The injunction must be dissolved as to Manara, and continued as to the other defendants.